## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DISTRICT

| | | |
|---|---|---|
| JERRY BROWN, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 C 6792 |
| | ) | Magistrate Judge Schenkier |
| vs. | ) | |
| | ) | |
| JOHN E. POTTER, Postmaster General | ) | |
| of the United States, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER[1]

This is an employment discrimination case filed by plaintiff, Jerry Brown, against defendant,

John E. Potter, Postmaster General of the United States, alleging various civil rights violations.

Specifically, Mr. Brown's complaint asserts four claims: (1) failure to accommodate an alleged

disability in violation of the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.* (Count I); (2) age

discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §

623 (Count II); (3) race and sex discrimination in violation of Title VII of the Civil Rights Act, 42

U.S.C. § 2000e *et seq.* ("Title VII") (Count III); and retaliation in violation of Title VII (Count IV).

Defendant has filed a motion for summary judgment as to all four claims (doc. # 33). The matter

now has been fully briefed.[2] For the reasons given below, the Court grants defendant's motion.

---

[1]On November 16, 2007, by consent of all parties and pursuant to 28 U.S.C. § 636(c), this case was assigned
to this Court for all proceedings, including entry of final judgment (doc. ## 27, 29).

[2]Under the briefing schedule set by this Court, defendant was given an opportunity to file a reply memorandum
in support of the motion for summary judgment by March 7, 2008 (doc. # 32). Defendant did not file a reply by that
date; nor did defendant file a motion seeking additional time in which to file a reply. We therefore consider the briefing
closed, and address the motion based on the papers that have been submitted.

We begin with the legal standards that govern summary judgment motions, which are well-established. Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and that the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To be material, a fact must be able to affect the outcome under the substantive law governing the motion. *Insolia v. Philip Morris Inc.,* 216 F.3d 596, 595-99 (7th Cir. 2000). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249-50.

In deciding a motion for summary judgment, the Court must view all evidence in the light most favorable to the nonmoving party, and must draw all reasonable inferences in the nonmovant's favor. *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir. 1990). *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000). The non-moving party's burden is to identify facts that are both material and genuinely disputed. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The moving party need not affirmatively disprove the opponent's case; rather, the moving party can win summary judgment by establishing the lack of evidentiary support for the non-moving party's position. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52. When a material fact or a set of facts yields competing but reasonable inferences, then there is a genuine issue that precludes summary judgment. To establish a genuine issue of material fact, the party opposing the motion for

summary judgment must file, pursuant to Local Rule 56.1, a concise statement outlining the material facts that require denial of summary judgment, supported by citations to the evidentiary materials that support those denials (*e.g.,* affidavits, depositions, answers to interrogatories, admissions etc.). Fed. R. Civ. P. 56(c). Although the party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact, *Celotex,* 477 U.S. at 323, the non-moving party cannot rely upon the pleadings alone, but must use the evidentiary tools outlined above to identify the material facts that show there is a genuine issue for trial. *Id.* at 324; *Insolia,* 216 F.3d at 598.

If the facts asserted by a party are merely self-serving in a conclusory way or mere hearsay, then those assertions cannot serve as the basis for supporting or defeating an otherwise proper motion for summary judgment. *Payne v. Pauley,* 337 F.3d 767, 772 (7th Cir. 2003) (noting that while the self-serving nature of statements in support or opposition to summary judgment is not in itself a problem, since "most affidavits submitted for these purposes are self-serving," affidavits that are not based on personal knowledge and that state only speculation "fail to thwart summary judgment"); *see also, Anderson v. Diversified Systems, Inc.,* No. 1:06-cv-1076-DFH-TAB, 2008 WL 1882898, *1 (S.D. Ind., April 24, 2008) (same). But, a court will generally deny summary judgment if the facts asserted by the opposing party are not conclusory, are based on personal knowledge and meet other evidentiary requirements, so long as they create a genuine dispute of material fact. That is the case even if the only evidence submitted on a fact is the testimony of the opposing parties in affidavits or depositions. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *Payne,* 337 F.3d at 772.

3

Under our local rules, a party opposing summary judgment who fails to offer evidence to rebut a statement of undisputed material fact set forth by the movant does so at his peril: "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3)(C), Local Rules of the United States District Court for the Northern District of Illinois. Our appeals court has repeatedly upheld the application of these rules, as appropriate and necessary tools of case management. *Koszola v. Bd. of Educ. of the City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) ("[w]e have emphasized the importance of local rules and have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment"). The same principle holds true when defendant fails to contest any additional facts set forth by plaintiff. *See* LR 56.1(a)(3).[3]

## II.

The undisputed material facts relevant to defendant's summary judgment are taken from the defendant's Local Rule 56.1 Statements of Material Fact (hereinafter "DSOF ¶ ___"), as well as plaintiff's LR 56.1(a)(3) Statement of Additional Facts (hereinafter "PSAF ¶ ___"). Where a fact has been genuinely disputed and is material, that is noted. Where a fact has been disputed, but we find the dispute immaterial or not genuine, we note that as well.

---

[3]The parties have been (far) less than scrupulous in their compliance with Local Rule 56.1. Plaintiff's "response" to defendant's statement of uncontested facts often is, in fact, completely non-responsive to the facts alleged. Similarly, defendant failed to respond at all to plaintiff's statement of additional facts. That said, the materials submitted are sufficient to show that summary judgment is appropriate, as we explain below.

4

**A.**

Mr. Brown is and has been employed by the United States Postal Service as a letter carrier at the Hazel Crest, Illinois Post Office; he has held this job in this location for almost 29 years (DSOF ¶ 1, citing Defs.' Ex. A, 3-4). He will retire when he reaches his 30-year anniversary in December 2008 (*Id.*, citing Ex. A, at 4). Mr. Brown is a white male (Answer ¶ 9); on December 15, 2008, he will turn 57 years old (Ex. F, at 1).

Mr. Brown claims to have asthma, but has provided no medical documentation to support that claim. In any event, Mr. Brown admits that his self-described asthma condition is controlled by the medications he takes and does not affect his day to day life if he avoids things that cause an asthma attack (*e.g.,* ozone, grass, pollen and diesel fumes) (DSOF ¶ 11). Defendant denies that plaintiff has any record of asthma or that plaintiff's supervisors were aware of this condition at the time of the events in question. In a 1999 decision rejecting a claim by Mr. Brown for occupational asthma, a Supervisor Claims Examiner for the United States Department of Labor cited to a final report by a board certified specialist in pulmonary medicine opining that Mr. Brown did not suffer from asthma (DSOF ¶ 12, citing Ex. F, at 224-26). Nonetheless, defendant concedes that plaintiff told his supervisors from time to time that he had asthma and was having or about to have an asthma attack. The defendant acknowledges that when this occurred, defendant responded by eliminating the extra work that plaintiff – like other carriers – otherwise would have to do (DSOF ¶ 18).

During the time periods relevant here, plaintiff had three supervisors. Sharon Turner-Hall was the Customer Service Supervisor at the Hazel Crest Post Office from May 2005 until November 2005. Ms. Turner-Hall was plaintiffs' immediate supervisor (DSOF ¶ 2, citing Defs.' Ex. G, at 245). Ms. Turner-Hall is an African-American woman who, in late 2005, was approximately 43 years of

age (Def.'s Ex. G, at 29, ¶1). Archie Butler was detailed to the Hazel Crest Post Office as an Acting Customer Service Supervisor in October 2005 (*Id.*, citing Ex. H, at 258). His job included training and mentoring letter carriers such as the plaintiff (*Id.*). Mr. Butler is an African-American male who, in late 2005, was 37 years of age (Def.'s Ex. H, at 39) . James Fuscaldo was the Officer in Charge of the Hazel Crest Post Office in 2005, and he was plaintiff's second-line supervisor (*Id.*, Ex. F, at 200). Mr. Fuscaldo is a Caucasian male who, in 2005, was younger than 40 years of age (Def.'s Ex. F, at 14, ¶ 1).

Plaintiff had a poor working relationship with Mr. Fuscaldo (DSOF ¶ 4) (Ex. F, at 14-18 (Fuscaldo Affidavit)). Plaintiff specifically asserts that Mr. Fuscaldo "would get in [his] face by screaming at him and spitting over Plaintiff's face" (Pl.'s PSAF ¶ 6).[4] Defendant does not controvert this fact in any LR 56.1(a)(3) Response, so we deem it established.

For purposes of this motion, there are two relevant time periods that provide the basis and context for plaintiff's claims. We address each one in chronological order below.

**B.**

The first relevant time period is August 1, 2005. Plaintiff was working that day under the supervision of Ms. Turner-Hall; Mr. Fuscaldo was not at work that day. Plaintiff reported for work on August 1, 2005, to do his normal letter carrier route: City Route 8 (DSOF ¶ 14). Plaintiff's normal route requires him to "case" (that is, to organize by zip code) the mail for his route in the post office for two hours. He then delivers mail on the street for approximately 5 hours and 50 minutes

---

[4]Plaintiff's deposition testimony relates general incidents of "spitting in his face" while Mr. Fuscaldo reprimanded him. The spitting was described as part of Mr. Fuscaldo's speaking (that is, that Mr. Fuscaldo "spit" or "sprayed" when he spoke excitedly) (Ex. A, at 10). Moreover, while plaintiff says this "spitting" occurred more than once, he does not quantify the number of times this occurred.

in a postal truck to mailboxes on the street in one location; it does not require walking delivery to a door (Def.'s Ex. A, at 14; Pl.'s Ex. B, at 14). The remaining 45 percent of plaintiff's route involves making walking deliveries (DSOF ¶ 14). Normally, plaintiff is scheduled to return to the office at 4:30 p.m. (DSOF ¶ 14).

On August 1, 2005, plaintiff and the other letter carriers were told that there was extra work that day, due to the absence of a letter carrier (DSOF ¶ 18). When a letter carrier is absent, that carrier's route must be split among the other letter carriers on duty that day (DSOF ¶ 15). In Postal Service parlance, the portion of extra work that a letter carrier performs is called a "pivot" (*Id.*).

On August 1, 2005, plaintiff was given a pivot requiring him to do an additional 1.5 hours of work beyond his normal 8-hour per day route (DSOF ¶ 17). When he learned of the extra work, plaintiff requested his pivot in the morning rather than the afternoon, because it was an unusually hot day (DSOF ¶ 6). He was told, however, that the pivot was not ready when he left the office to begin his regular route, because the letters had not yet been cased (DSOF ¶ 19). Instead, Ms. Turner-Hall delivered the pivot to plaintiff at 4:30 p.m. that day, at the end of his regular route (DSOF ¶ 21). Ms. Turner-Hall routinely gave the same pivots to the same carriers so that they could become familiar with that portion of the absent carrier's route (DSOF ¶ 16). Plaintiff had been assigned to this same 1.5-hour pivot approximately 20 times during the summer of 2005 (DSOF ¶ 17). He was thus familiar with the route (*Id.* ¶ 16).

When Ms. Turner-Hall brought him the pivot on August 1, plaintiff did not refuse the pivot for any reason (*Id.*). Nor did plaintiff say that he would not be able to do the pivot because of an actual or imminent asthma attack (DSOF ¶ 21). In the past, if plaintiff notified his supervisors of

7

such an attack, they would not give him extra work; plaintiff knew this. Instead, plaintiff simply took the pivot and told Ms. Turner-Hall that he would be late returning to the office (DSOF ¶ 21).

When plaintiff was near the end of the pivot, he stumbled on a porch with a crack in it (DSOF ¶ 22). At the time, plaintiff was not worried about any injury, and he finished the extended route and returned to the office. However, plaintiff did not return at the expected time of 6:30 p.m. (when the other carriers returned), but rather after 7:30 p.m. (DSOF ¶ 22). Plaintiff testified that he had experienced difficulty in completing this pivot in 1.5 hours even before August 1, 2005. Due to the stumble on the porch and the heat on August 1, 2005, plaintiff was taking the route at a slower pace that day, which resulted in his late arrival time (Pl.'s Ex. B, at 22, 65, 67).

Ms. Turner-Hall was on the phone with Mr. Fuscaldo when plaintiff arrived. Mr. Fuscaldo insisted on speaking to plaintiff over the phone (DSOF ¶ 24). According to plaintiff, Mr. Fuscaldo was "cussing and yelling, telling [him] that coming in at 7:30 was unacceptable" (DSOF ¶ 24). At the end of the phone conversation, plaintiff explained to Ms. Turner-Hall that he was injured when he stumbled on a step. She informed plaintiff of the paperwork and time requirements for submitting a report of injury (Pl.'s Ex. B, at 67-68).

Plaintiff returned to work the following day claiming pain in his knee. Ms. Turner-Hall authorized a "minimal walking" limitation on his regular route: she provided him with a stool for plaintiff to use while casing the mail, and replaced the walking portion of his route with more mounted stops (DSOF ¶ 26).[5] Plaintiff later saw a doctor and learned that he had a torn meniscus

---

[5]Plaintiff purports to dispute this assertion, but the dispute is not genuine. The evidence he offers to controvert this statement actually supports defendant's assertion. Plaintiff is thus not disputing this assertion so much as he is arguing with the characterization of the modified work schedule as a "reasonable accommodation," because he was simply given his former route back without the additional work added by the pivot. We deem admitted the fact assertions in DSOF ¶ 26 (but not the characterization of those facts as an "accommodation").

8

in his knee (DSOF ¶ 25). Plaintiff concedes that even with his knee injury and asthma, he has been able to perform his ordinary route with the adjustments provided by Ms. Turner-Hall on August 2, 2005 (DSOF ¶ 27).[6]

Defendant issued plaintiff a "letter of warning" for unsafe practices based on his stumble and injury on August 1, 2005 (DSOF ¶ 6). Plaintiff contested this action through a written grievance (DSOF ¶ 7). In the grievance, plaintiff complained that another letter carrier, Susan Hankins, an African-American woman younger than 40 years of age, was not disciplined when she fell and injured her leg and ankle a short time before plaintiff's injury (DSOF ¶ 6). Plaintiff also complained that on August 1, 2005, another letter carrier, Marge Namath, a 50 year old Caucasian woman, was given her pivot in the morning, but plaintiff, a 54 year old Caucasian male, was not – even though he requested a morning pivot (DSOF ¶ 6). Ms. Turner-Hall stated in her affidavit that Ms. Namath returned from her ordinary route in the morning to pick up the pivot, but plaintiff did not. Thus, Ms. Turner-Hall took the pivot to him at 4:30 p.m. at the end of his ordinary route (Def.'s Ex. G, at 25, ¶ 3). A dispute resolution team resolved plaintiff's grievance by determining that the letter of warning should be expunged from plaintiff's records (DSOF ¶ 7).

**B.**

The second relevant time frame concerns the period after August 1, 2005. There are three episodes that are relevant here.

---

[6]The plaintiff purports to dispute this statement, as well, but the dispute is not genuine for the same reasons stated in note 5, above.

**1.**

In September 2005, plaintiff contacted an Equal Employment Opportunity ("EEO") Counselor at the Postal Service office. Plaintiff informally complained about age and disability discrimination against him by Mr. Fuscaldo and Ms. Turner-Hall (DSOF ¶ 5). This informal complaint was based on his understanding that "Susanne" (namely, Ms. Hankins), an African-American woman who was younger than 40, was not given a letter of warning or disciplined for "unsafe practices" when she hurt her ankle and leg while working on her route, as he was, but instead was promoted (PSAF ¶¶ 26-28).

Defendant does not deny the fact that plaintiff was given a letter of warning for unsafe acts and Ms. Hankins was not. Instead, defendant offers evidence that Ms. Hankins was granted the promotion before her injury, but because she could no longer deliver mail after the injury, she was allowed to move into the "clerk" position six weeks sooner than originally scheduled (DSOF ¶ 35).[7] Defendant also notes that the EEO counselor and a dispute resolution team resolved plaintiff's grievance by determining that the letter of warning should be expunged from his records (DSOF ¶ 7).

**2.**

Beginning on August 2, 2005, Ms. Turner-Hall adjusted plaintiff's ordinary route (due to his knee injury on August 1, 2005), so he would not have to stand and walk as much. Plaintiff nonetheless complained to Mr. Fuscaldo that he was "overburdened" by that route and he could not

---

[7]Plaintiff offers no evidence to dispute this fact statement. Instead, he argues that the support offered for it is inadmissible because the supporting evidence is hearsay and lacks foundation. This information was provided by Mr. Fuscaldo in his affidavit responding to the EEO officer's investigation of plaintiff's complaint regarding this issue. Since Mr. Fuscaldo was a supervisor, his statements relating to job transfers and promotions for his subordinates are within his personal knowledge and are not hearsay. We thus find this fact established for purposes of this motion pursuant to LR 56.1(B)(3)(C).

10

complete his work within eight hours (DSOF ¶ 28). Specifically, plaintiff asserts that an additional 149 stops were added to his regular route – stops that were more voluminous than the other 300 carrier stops divided between the other letter carriers in the office (PSAF ¶ 25). As a result, plaintiff complained that he could not complete these stops plus his regular route in eight hours, but he was forced to work overtime to complete his route (PSAF ¶ 11). Plaintiff further asserts that these additional 149 stops were part of an eliminated carrier route of 500 stops which his supervisors split up among him and the other postal carriers (PSAF ¶¶ 10, 24-25). Plaintiff complained to his supervisors that he was subject to disparate treatment because he had received the lion's share of the work (PSAF ¶ 9).

In late September 2005, plaintiff formally requested that his route be given a special count and inspection, to adjust the route so he could complete it in eight hours of work (DSOF ¶ 31).[8] During October 2005, to determine whether plaintiff's route was overburdened or whether plaintiff was engaging in "time wasting practices," Ms. Turner-Hall and Mr. Butler observed plaintiff in the office and on the street. Both supervisors noted examples of time-wasting practices and attempted to train plaintiff on how to avoid them (DSOF ¶ 30).[9] In January 2006, plaintiff's request for a special count and inspection was denied by Operation Support. Operation Support personnel – not plaintiff's supervisors – denied the request (DSOF ¶ 31).

----

[8] Plaintiff does not offer evidence to dispute this fact statement, but argues that it lacks foundation and is hearsay. We disagree. The material offered by defendant supports the statement, and we therefore deem it admitted. Defendant cites to Mr. Fuscaldo's affidavit to support this assertion. Mr. Fuscaldo was plaintiff's supervisor, and he personally knew about plaintiff's formal request for a route count.

[9] Plaintiff's response to DSOF ¶ 30 does not dispute the facts asserted but merely characterizes them as "harassment." The only support plaintiff cites is an affidavit he offers on summary judgment that repeats the allegation of harassment, and states that "[n]o other carrier was harassed or treated to the extent Affiant was followed" (Def.'s Ex. B, ¶ 15). Plaintiff offers no evidence to support this conclusory accusation, which is insufficient to create a genuine dispute on this point. We therefore find these facts established for purposes of this motion pursuant to LR 56.1.

In December 2005, plaintiff filed a formal grievance with defendant regarding denial of his request for a special count and inspection (DSOF ¶ 32).[10] In connection with this grievance, plaintiff claimed that defendant denied him two forms that he requested to document his complaints (*e.g.*, documents "3996" and "1571") (DSOF ¶ 33).[11] However, according to Mr. Fuscaldo, plaintiff was given instructions by his union and management on how to obtain copies of these forms, but he failed to follow the instructions. Thus, he was not "denied" copies of the forms (DSOF ¶ 33).[12] The dispute resolution team that heard the grievance found that Mr. Brown and the union failed to challenge any of the documented instances of time-wasting practices in which plaintiff engaged. They also concluded that management's denial of plaintiff's request for a special count did not violate the collective bargaining agreement (DSOF ¶ 32).

**3.**

In December 2005, plaintiff filed a formal complaint alleging discrimination by the Postal Service, based on race, sex, age and disability (DSOF ¶ 8). Mr. Brown alleged that this discrimination was manifest through: (1) the letter of warning he received for unsafe practices; (2) the receipt of extra work in the morning rather than the afternoon on one particular day; and (3) unspecified harassment (DSOF ¶ 8, Ex. H). The Postal Service issued a final agency decision on this complaint, finding no discrimination (DSOF ¶ 9, Ex. A).

---

[10]Plaintiff purports to dispute this assertion for lack of foundation and because it is hearsay, but this dispute is not genuine. The evidence plaintiff cites, the denial of the grievance (Ex. F at 217-18), supports defendant's assertion; it does not controvert it.

[11]Plaintiff disputes the portion of this paragraph that relates to "two forms" because plaintiff would characterize the denial as one of "vital information" instead (Pls.' Response to DSOF ¶ 9). We do not find this dispute genuine or material. To the extent that plaintiff disputes this statement as narrative and in violation of LR 56.1(a), we find that this objection is without merit.

[12]Plaintiff's response to DSOF ¶ 33 does not contest this fact, so we deem it established pursuant to LR 56.1(a)(3).

12

In reaching that conclusion, the Postal Service considered plaintiff's claims of discrimination and determined that the "unspecified harassment" in plaintiff's complaint included the following incidents: (1) he was not given enough time to deliver his route; (2) Mr. Fuscaldo belittled him because he did not complete his route within eight hours; (3) he was followed and tested on his route; (4) he was threatened with discipline for time-wasting practices and failure to follow Postal Service safety rules; (5) he was not given assistance; and (6) he was denied copies of two forms (DSOF ¶ 9, citing Complaint, Ex. A, 1). On December 8, 2006, plaintiff filed the complaint currently pending before this Court.

## III.

Having reviewed the material and undisputed facts, the Court finds plaintiff's claims to be without merit. Our reasons are set forth below.

Plaintiff's overarching theory of discrimination is that he was treated differently than other postal service workers based on his alleged disability (*i.e.,* asthma), his age, his race and his gender. At the outset, the Court finds that plaintiff has failed to offer direct evidence of discrimination (despite his assertions to the contrary) on any of his claims. We will therefore proceed with the analysis by focusing on whether plaintiff has provided sufficient evidence necessary to defeat summary judgment using the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). The indirect method requires plaintiff to come forward with evidence sufficient to satisfy a *prima facie* case on certain basic elements of each claim. For the reasons set forth below, we find that plaintiff has not established a *prima facie* case of discrimination as to any of his claims. We address plaintiff's claims in the order they are pled.

13

**A.**

In Count I, plaintiff alleges that defendant violated the Rehabilitation Act by failing to accommodate his alleged disability of asthma on August 1, 2005. The Rehabilitation Act is the counterpart to the Americans with Disabilities Act; it incorporates the same prohibitions. 29 U.S.C. § 791(a),(g) (2007). The Rehabilitation Act prohibits employment discrimination by the federal government against disabled persons. The Rehabilitation Act requires federal agencies like the Postal Service to offer "reasonable accommodation" to "qualified individuals with a disability." *Id.*; 42 U.S.C. § 12112(b)(5)(A). To establish a claim under the Rehabilitation Act, a plaintiff must show that: (1) he or she is a "qualified individual with a disability"; (2) the federal agency knew of the disability; but (3) the employer nonetheless failed to make a "reasonable accommodation." *Bellino v. Peters,* 530 F.3d 543, 549 (7th Cir. 2008). A "reasonable accommodation" is one that "effectively accommodates the disabled employee's limitations." *Id.*

Here, the defendant assumes *arguendo* – and, thus, so do we – that Mr. Brown's claimed disability of asthma has evidentiary support in the record.[13] Nor does defendant assert that plaintiff was unable to perform the work as a result of his claimed asthma, and thus defendant does not dispute that plaintiff was a qualified person with a disability. The only question presented is whether there is evidence that defendant failed to reasonably accommodate plaintiff's claimed disability of asthma on August 1, 2005, when it decided not to give him the morning pivot he sought. The Court

---

[13] We make this assumption despite the failure of plaintiff to offer any medical evidence to support his claim of asthma, and the undisputed evidence that defendant had no medical records that plaintiff had asthma (and a record showing he did not) and that plaintiff's supervisors either did not know (DSOF ¶ 13) or believe he had asthma (DSOF ¶ 12). Viewed in light of this evidence, we wonder whether defendant's admitted practice of lightening plaintiff's workload when he complained of an imminent asthma attack is evidence that defendant regarded plaintiff as suffering from asthma or of a record that plaintiff had asthma – or is, instead, evidence of defendant taking a path of least resistance by acquiescing to a request of a long-term employee. Defendant's assumption for purposes of the motion that plaintiff has a disability eliminates the need for the Court to consider this point further.

14

finds that plaintiff has failed to offer sufficient evidence to create a genuine issue of material fact on this issue.

On August 1, 2005, plaintiff requested a morning pivot, but he did not specify a need for one based on his asthma (DSOF ¶ 19). Defendant was made aware that plaintiff wanted to do the pivot in the morning, but there is no evidence that plaintiff made defendant aware that the heat would render him unable to do his job due to his asthma (DSOF ¶ 19). And, in fact, the evidence is to the contrary. Even when he was given the pivot at 4:30 p.m. in the afternoon, plaintiff accepted the pivot without mentioning his asthma to Ms. Turner-Hall (DSOF ¶ 21). He completed the pivot with his regular route without having any problems due to asthma (DSOF ¶ 22). Although he was one hour late returning to the office, this was due to a knee injury, not his asthma (DSOF ¶¶ 11, 22). Plaintiff does not claim – or offer evidence to show – that he was unable to perform his duties in a timely fashion on August 1, 2005 because of his asthma, and the defendant's alleged failure to accommodate him by giving him a morning pivot.

Plaintiff claims that the defendant had given him morning pivots on many summer days in 2005 prior to August 1, and that defendant's failure to give him a morning pivot on that day thus was a failure to reasonably accommodate him. However, there is no evidence that the defendant ever gave the plaintiff a morning pivot to accommodate his alleged disability of asthma. Nor is there evidence that plaintiff has an asthmatic condition that requires reasonable accommodation every day of his work week. Even by plaintiff's own description, his alleged asthma is largely controlled with medication, and it only sporadically presents a problem for him (DSOF ¶ 11).

15

In short, plaintiff has failed to offer evidence linking his request of morning pivots – either on August 1 or on other dates – to his alleged asthmatic condition. Without that link, plaintiff's Rehabilitation Act fails. We therefore grant defendant summary judgment on Count I.[14]

## B.

In Count II, plaintiff claims age discrimination in violation of the ADEA. To defeat summary judgment on this claim by using the indirect method, plaintiff needs sufficient evidence to create a triable issue on each of the following elements: (1) he belongs to the protected class (here, someone age 40 years or older); (2) he performed his job satisfactorily; (3) he suffered a materially adverse employment action; and (4) he was treated less favorably than younger, similarly situated employees. *Barricks v. Eli Lilly and Co.,* 481 F.3d 556, 559 (7th Cir. 2007); *Griffin v. Potter,* 356 F.3d 824, 828 (7th Cir. 2004).

Plaintiff cannot defeat summary judgment on Count II, because he has failed to show he suffered a materially adverse employment action. Plaintiff alleges that, "because of his age 54 (DOB 12/15/51)" (Ex. F, at 1), defendant "caused and created a hostile work environment which unreasonably interfered with the terms and conditions" of his employment and created "a hostile and offensive work environment" (Compl. ¶ 15). Plaintiff further alleges that younger persons were treated differently and more favorably than he was treated (*Id.*).

Under the ADEA, a materially adverse employment action is one that significantly alters the terms and conditions of a person's job. *Griffin,* 356 F.3d at 829. The kinds of actions that qualify

---

[14]Alternatively, plaintiff seeks to defeat summary judgment on Count I by offering evidence of "disability discrimination" that violates "the ADA" (Pl.'s Opp. Mem. at 7). But, plaintiff has pled no ADA claim in his complaint. Even if he had, however, this claim would fail because the Rehabilitation Act incorporates the provisions of the ADA. Thus, the result would be the same under either statute.

do not include mere inconvenience to the employee, a changed job responsibility, discipline, letters of warning or additional or different work outside the duties of a person's regular job. *Id.* (collecting cases). Instead, a plaintiff must show something such as "unbearable working conditions" (a constructive discharge theory), or a salary cut in real terms. *Id.* General hostility and comments do not qualify unless the hostility was severe and pervasive. *Hilt-Dyson v. City of Chicago,* 282 F.3d 456, 465 (7th Cir. 2002).

In this case, plaintiff has not pointed to evidence that he suffered a materially adverse employment action as the result of age discrimination. Plaintiff does not claim he was demoted or that his pay was decreased. And, plaintiff's evidence falls short of showing that the alleged instances of harassment created the "unbearable working conditions" necessary to establish a materially adverse employment action.

For example, in *Griffin*, the Seventh Circuit concluded that a supervisor's alleged hostility towards a postal employee, which manifested itself in the form of negative comments about the employee, was not so severe or pervasive as to qualify as actionable adverse employment action to support plaintiff's *prima facie* case of discrimination under the ADEA. 356 F.3d at 829 (supervisor comment that plaintiff was "bad influence in office" and thought she knew everything may have created "unpleasant" environment, but it did not create actionable harassment). There, like here, the negative comments were, if found to be true, rude and unpleasant for the employee, but they did not make working for the post office impossible for that employee. *Id.*[15] Here, plaintiff testified that he did not like being treated in the ways he claims, but there is no evidence that this treatment resulted

___

[15]Plaintiff cites generally to incidents of Mr. Fuscaldo spitting, or spraying in plaintiff's face when Mr. Fuscaldo spoke excitedly (*see* note 4, above). But, plaintiff does not offer evidence sufficient to allow a jury to conclude that this was severe, or that this happened frequently enough to be pervasive.

17

in any tangible salary deductions or discipline that was not justified by the employer for objective reasons other than that of plaintiff's age.[16]

The fact that the morning pivot was given to Ms. Namath, age 50, does not provide evidence of an adverse employment action sufficient to establish a *prima facie* case of age discrimination. For starters, Ms. Nemeth was not substantially younger than Mr. Brown, who at the time was 54 years old. We further note that an inconvenient or unpleasant job duty that falls more heavily on some than on others is not an adverse employment action. *See Griffin,* 356 F.3d at 829. Mr. Brown offers no reason why the burden should have fallen more heavily on Ms. Nemeth than on him. To the contrary, Ms. Namath's pivot had been cased in the morning and thus was ready for delivery, but plaintiff's was not. There is also undisputed evidence that Ms. Namath came back to the post office from her regular route to pick up her pivot that morning, but plaintiff did not. Instead, Ms. Turner-Hall had to take the pivot to plaintiff on his route at 4:30 p.m. that day. These facts do not raise an inference that plaintiff was given an afternoon pivot as a form of discrimination.

Plaintiff also claims that his letter of warning was an adverse employment action. As proof, plaintiff points to the fact that Ms. Hankins, who was 37 years old, did not receive a letter of discipline or a reprimand by Mr. Fuscaldo when she was injured on her carrier route; instead, her promotion/transfer was expedited because she could no longer carry mail. This set of facts does establish differential treatment. But, this differential treatment is not actionable as an adverse employment action. *First,* the letter of warning issue has been mooted by the undisputed fact that

---

[16]Plaintiff testified to what he characterizes as a "Deming Principle" at work in the U.S. Postal Service. Plaintiff describes this Deming Principle as the practice of the Postal Service to make it harder for older employees close to retirement to do their jobs in an effort to get them to quit before they reach retirement age (PSAF ¶ 13). Plaintiff has no evidence of such a principle or policy at work in the Hazel Crest office or elsewhere within the USPS other than his unsupported say so, which is unsupported speculation. That speculation is insufficient to defeat summary judgment. *Payne,* 337 F.3d at 772.

18

plaintiff's grievance was resolved in his favor and the letter expunged from his record. *See Wong v. Barnhart*, No. 05 C 5681, 2006 WL 1719530, *1 (N.D. Ill., June 19, 2006). The cliche "no harm no foul" aptly applies here. *Second,* even if the letter had not been expunged, the case law indicates that letters of warning and other discipline for legitimate policy violations do not rise to the level of an adverse employment action sufficient to make out a *prima facie* case of age discrimination, because they do not materially affect the terms and conditions of employment. *See, e.g., Griffin,* 356 F.3d at 829.

Thus, plaintiff has failed to establish a *prima facie* case of age discrimination under the ADEA. Defendant is entitled to summary judgment on Count II.

## C.

In Count III, plaintiff (who is white) alleges race and gender discrimination in violation of Title VII. Specifically, plaintiff alleges that he was treated differently than African American employees with a disability or injury in the application of accommodations (Compl. ¶ 21); that he was subjected to selective enforcement for "minor infraction[s]" of policies, while African American and female employees were "not held to the same standard" (*Id.* ¶¶ 17, 20); and that the defendant and its agents "caused and created a hostile work environment which unreasonably interfered with the terms and conditions" of his employment (*Id.* ¶ 22).

To establish a *prima face* case of race and/or gender discrimination under Title VII, the plaintiff must show that: (1) he is a member of a protected class; (3) he suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. An adverse employment action under Title VII must materially alter the terms and conditions of the job. For example, a termination, a demotion and significant salary decrease, a less distinguished title, a

19

material loss of benefits, or significantly diminished material responsibility. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456 (7th Cir. 2002). Conditions of employment designed to harass and humiliate an employee because of protected status may constitute an adverse employment action, but this harassment must be actionable harassment (so severe or pervasive that it results in alteration of terms or conditions of the job). *Id.* The case law recognizes that "not everything that makes an employee unhappy is an adverse action," and that "a subjective perception of an adverse action is not sufficient." *Cullom v. Brown*, 209 F.3d 1035 (7th Cir. 2000).

The burden of establishing a *prima facie* case of disparate treatment is not onerous. *Texas Dept. Of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Nonetheless, the plaintiff has not carried this burden.

Plaintiff has presented no evidence that he suffered an adverse employment action, let alone an action that can be tied to his race (Caucasian) or gender (male). Plaintiff points to the same two women comparisons and the same two incidents of differential treatment as he used in opposing summary judgment on the age claim: (a) the fact that Marge Nemath (a Caucasian woman) was given a morning pivot on August 1, 2008, but he was given an afternoon pivot; and (2) the fact that Susan Hankins, an African-American woman, who was injured on her route and was subsequently promoted/transferred to an office position without any discipline or letters of warning, while he was given a letter of warning for unsafe practices and reprimanded by Mr. Fuscaldo (Pl.'s Opp. Mem. at 10-12).

These comparisons show differences in treatment; but disparate treatment, by itself, does not constitute an adverse action. And, as we explained above, plaintiff fails to identify an adverse employment action that resulted from the disparate treatment he alleges. Thus, plaintiff has failed

20

to establish a *prima facie* case of race or gender discrimination. Summary judgment is warranted on Count III.

**D.**

In Count IV, plaintiff alleges that defendant retaliated against him "based upon filing of requests for accommodations based upon his medical condition of Asthma and accommodations for work related injuries" (Compl. ¶ 27). Plaintiff claims that this is "disparate treatment" that caused a "hostile and offensive work environment" in violation of Title VII.

Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin. *Harris v. Forklift Sys.,Inc.,* 510 U.S. 17, 21 (1993). Toward that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory. *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986). But, Title VII does not protect a request for accommodations based on a disability; being disabled is not a protected class under Title VII. The act of requesting an accommodation for a disability is protected by the Rehabilitation Act. 29 U.S.C. § 794(a); 34 C.F.R. § 100.7(e). However, plaintiff did not plead a retaliation claim under the Rehabilitation Act.

But, even if he had done so, such a claim would fail. A plaintiff alleging a retaliation claim under the Rehabilitation Act must show: (1) that he engaged in protected activity; (2) that defendant's retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights; and (3) that there was a causal connection between the protected activity and the retaliatory action. *See Lauren W. Ex rel. Jean W. v. Deflaminis,* 480 F.3d 259 (3rd Cir. 2007). The harassment plaintiff alleges as retaliation for his protected activity of requesting a reasonable

21

accommodation of a morning pivot does not rise to an actionable level. There are several reasons for this. *First*, the harassment alleged at most resulted in alleged name calling (which Mr. Fuscaldo and the other supervisors deny), raised voices, one case of spitting and expunged letter of warning. This "retaliatory action" was, in fact, not sufficient to deter the plaintiff from exercising his right to request accommodations, as shown by the fact that he received his ordinary route without a pivot after he was injured on August 1, 2005. *Second*, there is no evidence that Mr. Fuscaldo's behavior toward the plaintiff was caused by plaintiff's request for a morning pivot and/or his knee injury which resulted in the modified work schedule Ms. Turner-Hall gave him on August 2, 2005. Plaintiff therefore could not establish a *prima facie* case of discrimination to survive summary judgment on a retaliation claim under the Rehabilitation Act, even if he had pled one. Defendant is entitled to summary judgment as to Count IV.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (doc. # 33) is granted.

ENTER:

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: August 28, 2008**

22